*Mayor*

*Filed*
**D.C. Superior Court**
10/09/2019 04:66AM
**Clerk of the Court**

*10/10/2019*
*2:39*

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Khiry Malik

Case Number: **2019 CA 006650 B**

vs

Date: _____

Gov't of the District of Columbia

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* | Relationship to Lawsuit |
|---|---|
| William Charles Cole Claiborne III | ☐ Attorney for Plaintiff |
| Firm Name: | ☐ Self (Pro Se) |
| Telephone No.: **202/824-0700**   Six digit Unified Bar No.: **446579** | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury   ☐ 6 Person Jury   ☐ 12 Person Jury
Demand: $ _____   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: **Tiffany Lee**   Judge: **Puig-Lugo**   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

NATURE OF SUIT:   *(Check One Box Only)*

### A. CONTRACTS

COLLECTION CASES

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☒ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE   IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/w/ William Claiborne
_____
Attorney's Signature

10/8/2018
_____
Date



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Khiry Malik
_____
                                        Plaintiff
                    vs.

Gov't District of Columbia, serve Mayor          Case Number   2019 CA 006650 B
_____
                                        Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

William Claiborne                                    *Clerk of the Court*
_____
Name of Plaintiff's Attorney

717 D Street, NW, Suite 300                          By _____
_____                              Deputy Clerk
Address
Washington, DC 20004

202/824-0700                                         Date          10/10/2019
_____
Telephone
如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ  ትርጉም  ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
                                    Demandante

                contra

_____            Número de Caso: _____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____            *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

_____    Por: _____
Dirección                                           Subsecretario

_____    Fecha _____

Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면 (202) 879-4828로 전화주십시오     የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA

**KHIRY MALIK**
Apt. 104
1215 Alabama Avenue, S.E.
Washington, DC 20019

Plaintiff,

v.

**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**
Mayor Muriel Bowser
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

and

Attorney General Karl Racine
Designee Darlene Fields
Civil Litigation Division, Ste 6000 South
441 4th Street, NW
Washington, DC 20001
202-724-6507

Defendant.

Civil Action No.:   **2019 CA 006650 B**

## COMPLAINT FOR INDIVIDUAL MONEY DAMAGES AND JURY DEMAND

### Introduction

1.     This is an action brought by Khiry Malik because the Government of the District of

Columbia (the "District of Columbia" or the "District") through its Department of Correction

("DOC") held him in DOC custody past his "Release Date," the date on which he was entitled to

release from custody because the DOC's basis to restrain him had expired.

1

2.     Mr. Malik brings both common law (false imprisonment) and § 1983 claims against the District.

3.     Mr. Malik's over-detention constituted a predicate constitutional violation under the Fifth Amendment and a violation of the common law. Moreover, the District's policies and practices and their implementation were the moving force of the predicate constitutional violation.

4.     The District is liable in *respondeat superior* for the common law violations of its employees in holding Mr. Malik past his Release Date.

5.     Mr. Malik timely submitted a timely "12-309 notice" to the District pursuant to D.C. Code § 12-309.

### Jurisdiction and Venue

6.     This Court has jurisdiction over Mr. Malik' § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and this Court has jurisdiction over Mr. Malik's District of Columbia law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district.

### Parties

8.     Plaintiff Khiry Malik - held past his Release Date at the DC Jail and illegally strip searched.

9.     The Government of the District of Columbia (hereinafter the "District of Columbia" or the "District") is a municipal corporation capable of being sued under D.C. Code § 1-102.

2

## Factual Allegations

### Mr. Malik's over-detention

10.     In 2018 Mr. Malik was held in District of Columbia Department of Corrections' ("DOC") custody on 2017 CMD 016652 and possibly other cases, *e.g.* 2017 CMD 018360 and 2017 CMD 018426.

11.     Mr. Malik should have been released on about December 12, 2018.

12.     Instead, he was over-detained at the DC Jail or another DOC facility until about December 28, 2018.

13.     Mr. Malik believes the over-detention was due to a sentence calculation error because the day he was sentenced in the last of his cases his credit time exceeded his sentence so he should have been released that day.

14.     But, instead of being released at the courthouse or being diverted to "MHU" (MHU is a holding facility by the grounds of the DC Jail set up pursuant to the "Bynum Settlement" to hold court returns entitled to release while they are being "out-processed" from the DC Jail or CTF so they do not have to be strip-searched after they are entitled to release), DOC transport staff returned Mr. Malik to either the DC Jail or CTF.

15.     Before being put in his cell he was subjected to a humiliating visual strip search in which he had to take off all his clothes and undergo visual inspection by one or more corrections officers in front of other inmates.

16.     It is the policy and practice of the DOC to strip-search all inmates entering or leaving the DC Jail or CTF.

3

17.     Mr. Malik's attorney, a member of the Georgetown Law School's "D.C. Law Students In Court program" informed both the Records Office and the Warden of the DC Jail on about 12/12/2018 that he was being over-detained.

18.     Undersigned counsel informed both the DOC General Counsel and an Assistant Attorney General of the District of Columbia by email on 12/20/2018 that Mr. Malik had been entitled to release on 12/12/2018

## The District's policies and practices and their implementation caused Mr. Malik's over-detention

### DOC facilities and Inmates in the DOC facilities

19.     The DOC houses a variety of inmates including inmates pending trial in one of the District of Columbia courthouses (U.S. District Court or District of Columbia Superior Court), inmates serving misdemeanor sentences imposed by Superior Court judicial officers, and inmates committed by agencies such as the U.S. Marshal Service, *e.g.*, in-transit commitments.

20.     The DOC holds prisoners in the Central Detention Facility ("CDF" or the "DC Jail"), the Correctional Treatment Facility ("CTF"), and at various halfway houses located in the District of Columbia ("DOC facility" or "DOC facilities").

21.     Most prisoners held in the custody of the Department of Corrections are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators, or a combination of these.

22.     Most prisoners held in the DOC are either pending trial in the Superior Court or serving misdemeanor sentences imposed by Superior Court judicial officers.

23.     Some prisoners are either pending trial in the U.S. District Court or are awaiting transfer to a federal prison to begin serving their sentences. Persons serving felony sentences generally served their sentences at a federal prison.

24.     The USMS also commits prisoners to the DOC for short periods of time – typically overnight – on "in-transit" holds while transporting prisoners.

### The DOC's Inmate Management System

25.    The Records Office located at the DC Jail ("Records Office") is responsible for administering and maintaining the records, including the paper judgment and commitment files, of all persons housed at the DC Jail, CTF and the halfway houses for all persons held in custody of the District of Columbia.

26.    The Records Office is responsible for keeping track of inmates in the DOC including why they are committed to the DOC, e.g., pending trial or serving sentences.

27.    The Records Office is also responsible for ensuring that all persons housed at the DC Jail, CTF and the halfway houses are released on their Release Dates specified in their court orders or otherwise.

28.    All prisoners housed at a DOC facility are initially booked into the DOC through the R&D post (inmate reception center) at the DC Jail.

29.    They are brought to the R&D post and then after booking and classification they are assigned to housing in a DOC facility.

30.    All commitments and releases in and out of the DC Jail are processed by the Records Office.

31.    The American Correctional Association standards require detention facilities to ascertain the identity and reason for detention of everyone booked into a facility.

32.    Each person arriving at the R&D should have a commitment/ release document so the R&D can know whether they should be in the DOC and why.

33.    So it is the responsibility of the R&D post to reliably transmit orders from the R&D post to the Records Office staff.

34.    Almost all inmates arrive at R&D on a bus or van from a courthouse.

35.    The inmates are either new commitments or court returns.

6

36.　　"Court returns" are inmates who leave a DOC facility to go to court and return to the DOC facility on the same day.

37.　　Some court returns are released directly from the courthouse.

38.　　Sometimes the inmate's commitment/ release documents arrive with the inmate but frequently they do not.

39.　　If an inmate's commitment/ release documents do not arrive with the inmate the R&D returns the inmate to the DOC facility they originated from or holds them in the DC Jail.

40.　　If the commitment/ release documents does not arrive the inmate is held until someone – their lawyer, a judge, an agency – call for them.

41.　　If no one calls for the inmate they sit in the DOC system indefinitely because the DOC takes the position that they have no obligation to review inmates and identify inmates without orders and ascertain when they are entitled to release.

**The DOC also lacks a formalized and documented training for LIEs (the Records Office staff).**

42.　　The DOC also lacks a formalized and documented training for LIEs (the Records Office staff) which exacerbates the problems.

43.　　Currently the DOC relies on "on the job" training provided by Records Office staff which ensures that bad habits are passed onto to new workers.

### Paper Driven Inmate Management System

44.　　Judicial release orders are generated electronically and could be reliably and securely transmitted electronically directly to the DOC Records Office using available secure technology.

45.　　But, the DOC relies on printed out paper copies to run the DOC inmate management system.

7

46.     The DOC runs a paper system for tracking inmates, why they are being held, and when they should be released.

47.     Judicial orders and other commitment/ release documents travel to and from the court rooms and the Records Office via the R&D post on the same transport vehicles used to transport prisoners from the courthouses to the DOC facilities.

48.     This system makes the transmission of orders and other commitment/ release documents dependent on the limitations of a shuttle service between the courthouses and the DC Jail instead of using modern technology to reliably transmit orders directly from courthouse clerks to the Records Office staff.

49.     The major reasons the DOC runs a paper based release system are that: (1) none of the DOC inmate management system database or the courthouse docketing databases are capable of communicating with each other; and (2) the DOC has never implemented a system to reliably and promptly transmit orders and other commitment / release documents from the courthouses to the Records Office; (3) the DOC erroneously believes that converting electronic documents to paper and then relying on paper copies of the electronic originals results in a more secure process.

50.     Neither the U.S. District Court nor the District of Columbia Superior Court use paper systems to manage their dockets issue commitment/ release documents.

51.     So all communication between judges in the courthouses who commit and release inmates is via a "sneaker" network of transport officers shuttling prisoners between the DOC facilities and the courthouses carrying paper release and committeemen orders from the courthouses to the R&D post, and then from the R&D post to the Records Office.

52.     Similarly, in-transit commitments from USMS in the courthouses travel via the sneaker network on the prisoner transport vehicles.

8

53.   The paper and prisoners flow from the court rooms where USMS deputies collect orders, to the cellblock in the Superior Court and the District Court where deputy Marshals hand the prisoners and the paperwork off to DOC transport officers, and then on to the R&D post where the transport officers deliver the prisoners and whatever paperwork they have to R&D staff.

54.   For various reasons – e.g., deputy Marshals do not collect a prisoners' paperwork from the clerk before taking the prisoners to the cellblock, prisoners go to more than one courtroom, paperwork gets lost or misplaced, transport officers take prisoners without waiting for their paperwork – many prisoners arrive at the R&D post without commitment/ release paperwork.

55.   Similarly the DOC has no electronic system for receiving "action notices" (document indicating when parole hold terminates) from the Parole Board.

56.   Instead, it relies on the same sort of "sneaker network," that is, notices of action are hand-carried.

57.   Moreover, the District has no tickler system for insuring that every visit to court results in an order or every parole hold results in a action notice.

58.   R&D staff (DC Jail post where inmates enter the jail) place the paperwork they have in a collection box.

59.   Records Office staff then collect the paperwork and take it upstairs to the Records Office where they use the paperwork – when and if it arrives at R&D – to make commitment and release decisions.

60.   Meanwhile, R&D staff place prisoners in DOC facilities whether or not that have received commitment/ release documents for that inmate.

9

61.    Many local detention facilities such as the DC Jail have courthouse clerks print copies of orders directly from the court rooms in the record offices using secure electronic transmission technologies such as the technologies used to store and transmit financial and government data.

62.    Other facilities de-link commitment/ release documents from the process of transporting prisoners by running taxi services where staff pick up orders from a collection point in the courthouses and deliver them directly to their records offices.

63.    Records Office staff are supposed to scan paperwork into a program upon receipt so it will not get lost but they do not scan paperwork upon receipt; as a result paperwork is routine goes missing.

### Problems caused by running a paper inmate management system

64.    The problem with the DOC inmate management system is not that the courts or the deputy Marshals delay in handing off orders to DOC staff.

65.    It is that the system the DOC uses to transmit commitment/ release documents to the R&D post, and then from the R&D post to the Records Office Records Office, and to process the commitment/ release documents and paperwork in the Records Office routinely causes untimely releases.

66.    Paper documents often get lost or misfiled, as is the case in a number of the erroneous and untimely releases noted above as reported in The Moss Report.

67.    Operating a detention facility using a paper inmate management system causes numerous delays in processing inmates and making timely releases, that is releasing inmates on their Release Dates, rather than before or after their Release Dates.

68.     For example, a longstanding problem at the Records Office since the <u>Bynum</u> days is that an inmate arrives at the DC Jail as a new commitment or a court return without paperwork. The R&D staff place the inmate in a DOC facility but Records Office do not enter the inmate into the system.

69.     So, no one in the DOC knows when or whether the person is entitled to release.

70.     The DOC takes the position that it has no obligation to check inmates and determine when they are entitled to release. They simply hold inmates till someone calls for them.

71.     Court returns entitled to release are routinely returned to the DC Jail without paperwork and thus held indefinitely even though they were ordered released.

72.     A secure and backed up paperless environment not only greatly minimizes the risk of losing or misplacing a digital document, it also provides a tracking mechanism from inception to completion. The Moss Report.

73.     The paper system allows staff to manipulate the orders and hide and under-report untimely releases and claim they never received them.

74.     The Records Office routinely covers up these late releases by asking the releasing judge for another copy of the release order with a post-dated release date on the order.

75.     Even if the judge will not issue a post-dated release order the Records Office cover up the problem by entering the date of actual release (the "Exit Date") in the JACCS system rather than entering the date the judge ordered the inmate released on that case in JACCS so the ruse cannot be discovered without looking behind the data in JACCS, the inmate tracking database.

76.     Or Records Office staff simply claim they never received a release order when they did.

77.     Because of litigation, D.C. Council hearings, annual oversight reports, and outside consultant reports the District and management at DOC knows and has known for years that the Records Office covers up releases and under-reports both over-detentions and early releases.

78.     For example, in the recent Moss Report the Records Office reported about 20 untimely releases to the Moss Group for the period from January 15, 2015 to the date of the Moss Report, October, 2018, of which the Moss Group determined that of the 14 reported over-detentions (not in active litigation) 13 were directly attributable to Records Office staff error or a combination of Records Office / R&D post error, and 17 of the 20 "untimely releases" were attributable error made by Records Office staff.

79.     But, the Moss Report also stated that since the Moss Group began its review, the DOC identified an additional 5 untimely releases all of which the Moss Group attributed to Records Office staff error.

80.     The Moss Report also internal inconsistencies in DOC reports on untimely releases provided by the DOC to the Moss Group which "calls into question the integrity of the data contained within the reports examined and further emphasizes the need for a unified and streamlined approach to tracking and reporting untimely releases."

81.     Over the years the DOC has drastically under-reported over-detentions and other untimely releases to the D.C. Council.

82.     The D.C. Council has been aware of the under-reporting because it has received accurate reports from other sources.

### Sentence calculation errors contribute to the untimely release problem

83.     The Records Office is also responsible for calculating Release Dates for persons serving sentences in the DC Jail.

12

84.     The only sentences the DOC Records Office has to calculate are misdemeanor sentences imposed by Superior Court judicial officers.

85.     Sentence calculation errors were one of the major causes of over-detentions during the Barnes litigation.

86.     The Records Office staff continue to make many sentence calculation errors.

87.     The Records Office does not have an automated system for calculating sentences.

88.     Sentences are calculated by Records Office staff but they are not checked for errors until the release date calculated by the Records Office staff originally calculating the sentence.

89.     This check may prevent early releases but it does not protect against over-detentions because under such a system any error resulting in an over-detention is not caught until the over-detention has already occurred.

90.     The current system is time-consuming and outdated and it does not incorporate into the computation process good behavior credit. The Moss Report.

91.     Sentence computations, as well as behavior credits, education, special projects, and work details are all manually entered into This practice leaves a large margin for staff calculation error. The Moss Report.

92.     There is no sentence computation manual.

**The processes and systems the DOC uses to process paperwork and release decisions causes errors that cascade and cause other errors in the inmate management system**

93.     The R&D post and the Records Office are crucial to the DOC's inmate management system because the R&D post funnels commitment/ release documents to the Records Office and the Records Office handles all release/ commitment decisions based on these documents.

13

94.     The processes and systems the DOC uses to process paperwork and to make commitment and release decisions are interconnected and the deficiencies and problems in the system and especially the Records Office are so endemic that errors in the R&D post and the Records Office become cascading failures which trigger the failure of other parts. The components then become overloaded from compensating for failed components and so on.

95.     The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their Release Dates going back before the turn of the century.

96.     For example, the DOC uses prisoner transport vehicles to transport paperwork to the Records Office. But, even though at least two such drivers are required on any given day, only a few DOC staff have the commercial drivers' licenses required to drive such vehicles. So if one such licensee cannot drive one day, the whole system slows down.

97.     The prisoner/ paperwork transporting system frequently sends or returns prisoners to the R&D post without paperwork.

98.     This causes delays when paperwork is found or subsequently arrives at the DC Jail.

99.     But, an even more severe problem arises when the R&D staff accept prisoners without paperwork, or with incomplete paperwork, for example accepting a USMS in-transit commitment without requiring paperwork on when the commitment should be released.

100.    The DOC takes the position that it is not required to investigate the Release Date for a prisoner sent as a new commitment to the jail or returned as a court return. It waits for some agency or person to call for such prisoners. If the person has been ordered released or if the USMS does not return to call for such a prisoner they remain in the DC Jail indefinitely.

### USMS commitments

101.    The U.S. Marshal Service is one of the agencies that commit inmates to the DOC facilities.

14

102.    the DOC provides transportation to Greenbelt, MD

103.    The District has had problems handling commitments by USMS deputies for years going back to the class period covered by the Bynum case.

104.    USMS can still "commit" prisoners to the Jail and then take them out using a USMS form (Form 40 or 41).

105.    The District also has had longstanding problems with keeping track of persons committed to the DOC on in-transmit commitments because the DOC accepts the prisoner on a USMS (Form 41) without demanding the corresponding Form 41 indicating when the person should be picked up as the Records Office Manual requires.

106.    The DOC Records Office Manual requires that when the USMS commits someone on a in-transmit commitment the USMS are supposed to provide two forms [Forms 40 or Forms 41] and the Jail staff are supposed to insist on receiving two forms - the IN Form 41 commitment form and also a second form, the OUT Form 41, saying when the prisoner is supposed to be picked up by the USMS.

107.    DOC compounds the problem because the DOC's official policy and practice is that it has no obligation to take steps to ensure that prisoners committed to the DOC are released.

108.    The DOC's official policy and practice with respect to such prisoners is to just leave them until someone comes to remove them or a judge sends a release order.

109.    Since most prisoners at the DOC are serving brief misdemeanor sentences or are held pretrial the DOC should be on notice when a person is held 30 days without some order from a judge or court appearance.

110.    The DOC has a financial interest in keeping USMS prisoners in the Jail because the USMS pays the District on a per day basis to house its prisoners.

**The District is deliberately indifferent to the problems at the DOC facilities and the District's deliberate indifference is the moving force behind a pattern and practice of untimely releases including over-detentions.**

111. The Records Office has a long and persistent history of over-detaining persons and releasing persons before their Release Dates.

112. One reason is the District treats a person as subject to detention until it actually receives notice to release from the committing authority (Superior Court, District Court, Parole Commission, US Marshals Service ("USMA") even when it knows or has reason to know the person is entitled to release).

113. For example, if the USMS commits a person on an "in transit" commitment – which is a one or two day stay – the DOC will take no steps to effect release or obtain authority to release (such as by sending the person to court or calling the committing agency) until the USMS arrives to retrieve the person. In such a case the DOC will take no steps towards releasing or asking about the person's entitlement to release; instead the DOC just waits for the USMS to come for the prisoner or send notice of release.

114. Similarly, even if the DOC through its Records Office or a case manager knows a person held on a parole hold is entitled to release because the parole hold has been vacated (or has reason to know the parole hold has been vacated) it will take no steps towards releasing or asking about the person's entitlement to release; instead the DOC just waits for the Parole Board to send notice of release.

115. The District is deliberately indifferent to the problems at the DOC facilities and the District's deliberate indifference is the moving force behind a pattern and practice of untimely releases including over-detentions.

16

116.    Mr. Malik in this case challenges the implementation of the DOC's policies, rather than the specific policies themselves.

117.    Mr. Malik challenges the policy *in toto* that simply delays all releases until the system, in its sweet time, and with the resources it chooses is ready to make releases.

118.    As the Moss Report indicated, over-detentions and early releases are flip sides of the same "untimely release" problem which both evidence an inmate management system which cannot release prisoners on their Release Dates. See the Moss Report prepared by the Moss Group in response to order of Judge Sullivan compelling District to explain in writing the circumstances surrounding the erroneous release of Mr. Jarrell Harris. U.S. v. Harris, 18-28 (EGS) docketed 11/13/2018 [40].

119.    The Moss Group reports about 20 over-detentions and early releases during a period whose boundaries are fuzzy.

120.    The Moss Report questioned the integrity of the data contained within the reports compiled and provided by the Records Office.

121.    The Moss Report stated that the longest over-detention was 5 days which obviously omits over-detentions such as this one and Mr. Smith's over-detention. Smith v. D.C., 15-161 (ABJ).

122.    Moreover, from talking to attorneys familiar with over-detentions in the DOC facilities and persons who have been over-detained in the last year Mr. Malik' counsel are aware of numerous over-detentions.

123.    Mr. Malik's counsel is also aware of persons held about six months and 9 months on misdemeanor warrants.

### Strip-searches

124.    The DOC strip-searches every prisoner coming into or out of the DC Jail or the CTF.

17

## Substantive Allegations

### Claim 1

### § 1983 Liability of District of Columbia for Overdetention

125.    Mr. Malik realleges and incorporates by reference all allegations set forth in this Complaint.

126.    The District of Columbia, and its agents and employees, have had a longstanding custom and practice of detaining people past their Release Dates.

127.    The District's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of Mr. Malik's substantive Fifth Amendment rights.

128.    The District was deliberately indifferent to their rights.

129.    The District's practices and policies and the implementation of its polices were the moving force behind the violation of Mr. Malik's rights.

130.    Accordingly, Mr. Malik is entitled to general and emotional distress and lost employment damages to be determined at trial.

### Claim 2

### Common Law Liability of District of Columbia for False Imprisonment

131.    Mr. Malik realleges and incorporates by reference all allegations set forth in this Complaint.

132.    The District's DOC employees failed to release Mr. Malik on his Release Date.

133.    The District's employees were acting within the scope of their employment at all times.

134.    The District is liable for the conduct of its employees in *respondeat superior.*

18

135. The District's actions, and failure to act, as described above, were the proximate cause of Mr. Malik' common law rights to be free from false arrest after the DOC's duty to release him arises.

136. The District is liable for the conduct of its employees in *respondeat superior*.

137. The District was deliberately indifferent to their rights.

138. Accordingly, Mr. Malik is entitled to general and emotional distress and lost employment damages to be determined at trial.

### Claim 3

### Common Law Liability of District for Illegal Strip Searches

139. Mr. Malik realleges and incorporates by reference all allegations set forth in this Complaint.

140. The DOC strip-searched Mr. Malik each time he entered and left the DC Jail or the CTF even when he was on way to release.

141. The District's actions, and failure to act, as described above, were the proximate cause of violations of Mr. Malik's common law privacy rights.

142. The District's employees were acting within the scope of their employment at all times.

143. The District is liable for the conduct of its employees in *respondeat superior*.

144. Accordingly, Mr. Malik is entitled to damages to be determined at trial.

### Prayer for Relief

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief:

1.  grant a jury trial on all claims so triable;

19

2.    award plaintiff compensatory and consequential damages in an amount to be determined at trial;

3.    award plaintiff attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988; and

4.    grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579

717 D Street, N.W., Ste 300
Washington, DC 20004
202-824-0700

**Jury Demand**

Plaintiffs demand a jury of six as to all claims so triable.

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Mr. Malik

20



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

KHIRY MALIK
Vs.                                                    C.A. No.        2019 CA 006650 B
GOVERNMENT OF THE DISTRICT OF COLUMBIA

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:   October 9, 2019
Initial Conference: 10:00 am, Friday, January 10, 2020
Location:   Courtroom 201
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin